Newark City National Bank v. Crane.

---

NEWARK CITY NATIONAL BANK et al.

*v.*

AUGUSTUS CRANE, individually, and as surviving executor of the last will and testament of Nathan Bolles, deceased, et al.

[Submitted March 13th, 1900. Decided March 21st, 1900.
Filed November 17th, 1900.]

Where, in a suit to construe a will, it was decreed that the will passed a vested estate to the children of the testator, subject to be devested, in favor of grandchildren, as to any of the real estate not actually sold and

conveyed prior to the death of the first taker, such decree was *res judicata* as against judgment creditors of one of the children; and hence such creditors were not entitled to their judgment debtor's share of the proceeds of land belonging to the estate sold after his death, though they were not parties to the suit to construe the will.

On final hearing on bill, answer, replication and proofs.

*Mr. Joseph P. Osborne* and *Mr. William H. Osborne,* for the complainants.

*Mr. John H. Meeker,* for the defendants.

PITNEY, V. C.

The contest in this cause is over a sum of thirty thousand dollars and more in the hands of the defendant Crane as surviving executor of, and trustee under, the will of Nathan Bolles, deceased. It is so much of the proceeds of a sale of real estate of the testator, made by Crane as surviving executor, as represents the share of Thomas N. Bolles, deceased, a son of the testator, under said will. Thomas N. was co-executor and trustee with the defendant Crane, but died before the sale of the lands which produced the fund.

The contestants on either side are the complainant, the Newark City National Bank and other judgment creditors, and a mortgagee of Thomas N. Bolles (who will hereafter be spoken of as the bank), on the one side, and the children of Thomas N. Bolles, on the other side, who are parties defendant.

The bank claims as a judgment creditor of Thomas N. Bolles, and asserts that its judgment was declared and decreed by this court, on February 3d, 1892, in the lifetime of the judgment debtor, to be a lien upon the lands which were sold to produce the fund in court. That decree was made in a contested, but unreported suit of Crane, executor, against Bolles, which was commenced on the 1st of November, 1890, and is the second of that name.

The children of the judgment debtor, on the other hand, claim by virtue of the twelfth clause in the will of Nathan Bolles, which is in these words: "It is my will that the issue of any

child who may hereafter decease shall receive the share or portion to which their parents would be entitled to if living." And they assert that the true construction of that clause, as applied to the case in hand, has been determined by this court in a contested suit of *Crane* v. *Bolles* (*No. 1*), commenced in April, 1889, in an opinion of the chancellor, reported in *4 Dick. Ch. Rep. 373* (where the will is set forth at length), and that a decree was made therein in accordance therewith on the 17th of May, 1892.

The counsel for the bank, on the other side, assert, and truly, that their client was not a party to that suit of *Crane* v. *Bolles,* which was the first of that name, and hence is not bound by any decree made therein. The children of the judgment debtor, on the other hand, assert truly that they were not parties to the second suit of *Crane* v. *Bolles,* and therefore are not bound by the decree relied upon by the bank to establish its lien; and they further set up and show that the suit No. 1 was commenced and was pending before the accrual of the encumbrances under which the bank and others claim herein. So that there was no intentional omission to make them parties to that suit.

It is plain, therefore, that neither party is bound by the decree proper in either cause which is relied upon, unless the failure of the bank to make itself a party to the first suit had that effect.

But there is a clear distinction between a decree and the law declared by the court which produces the decree, and though a party may not be bound by a decree, as such, he may be bound, so to speak, by the law which produces that decree. That is to say, his rights are affected, as all other citizen's rights are affected, by the declaration of the law made by the courts in the due administration of justice.

This rule is illustrated in New Jersey by the line of cases which seem to have fairly established the rule that, in a suit for specific performance of a contract for the conveyance of land, where the defendant sets up as a defence a defect in the title of the complainant, and its validity depends upon the construction of a written instrument—deed or will—the court may construe the deed or will, and the construction so adopted, so far at least as is necessary for the determination of the question then before

the court, will be binding, subject always to the right of appeal, on all persons interested in the question, whether parties to the suit or not. Such determination is the determination of a question of law. *Clark* v. *Denton, 9 Stew. Eq. 419,* and, on appeal, *Ibid. 534; Cruikshank* v. *Parker, 6 Dick. Ch. Rep. 21,* and, on appeal, *7 Dick. Ch. Rep. 310; Lippincott* v. *Wikoff, 9 Dick. Ch. Rep. 107* (at *p. 115*) ; *Fahy* v. *Cavanagh, 44 Atl. Rep. 154.*

It is quite impossible to entertain the notion that after the court of errors and appeals has determined that a particular estate has passed and become vested by virtue of a particular clause in a deed or will, and compelled the purchaser to accept and pay for the property on the strength of such determination, it will afterwards permit a person not a party to the record in which that determination was made, to procure from it a contrary determination. It is on the very ground that the court will in such cases stand by its determination that it undertakes to construe deeds and wills in debatable cases for the purposes of specific performance. The case of *Cruikshank* v. *Parker,* above cited, is an illustration of the power of the court to determine and finally settle a debatable question of that kind.

Let us, then, inquire what was the issue involved in *Crane* v. *Bolles (No. 1), 4 Dick. Ch. Rep. 372.* There one of the children of the testator, and who stood under the will in precisely the situation that Thomas N. Bolles stood here, had intermarried with Henry C. Howell, and borne him one child, Elizabeth Howell, and had then died. After her death, the bulk of the real estate still being undisposed of, dividends were accumulating in the hands of the executors, which were claimed by Henry C. Howell in the double capacity of administrator of his deceased wife and as tenant by the curtesy of her real estate, and the executors filed a bill for the construction of the will in general, and in particular to determine the rights to those rents and profits as between Henry C. Howell and his daughter Elizabeth. In that manner the construction of the twelfth clause of the will was brought directly in question before the chancellor and carefully considered by him.

He determined, in the first place, that the effect of the will was to convert the real estate into personalty. The result of

that would be to give Howell a greater right, as administrator, in the estate than as though not converted. But he decided, in the second place, that the effect of the twelfth clause was to give a vested estate to the children of the testator, subject, however, to be devested in favor of their children as to any of the real estate not actually sold and conveyed prior to the death of the first taker. The result was that Elizabeth Howell was decreed to be entitled to take all rents and interest which accrued on the share of her mother after her mother's death, and the proceeds of any sale of such share made thereafter, free from any claim on the part of her father.

This seems to me to cover the very point involved in this cause, and to declare and determine that the share given by the will to Thomas N. Bolles vested in him, but that it was subject to be devested in favor of his children as to any of the property which had not, in due course of administration, been sold at the date of his decease. That precise situation is here presented, and hence the children are entitled to the proceeds of the sales made and of rent which accrued since their father's death.

Now let us examine the decree that was made in the suit of *Crane* v. *Bolles* (*No. 2*), upon which the complainants rely.

Thomas N. Bolles was a non-resident of New Jersey, and was engaged in business, became unfortunate, and made a mortgage on his interest in the premises in question to one Faber, and gave him an order, in writing, on Crane for his share of the income of the estate. Subsequent to the making and recording of that mortgage divers foreign attachments were taken out against him in the New Jersey courts and executed upon the premises in question. An auditor was appointed and judgments entered for large amounts in favor of the several attaching creditors, of which the Newark City Bank was the leading one. The auditor in attachment claimed that Faber's mortgage was invalid, and claimed the rents and profits. Faber claimed the contrary. Thereupon the executor Crane filed a bill in the nature of an interpleader against his co-executor Bolles, the attaching creditors, and Faber. To that bill the complainant bank answered, and filed a cross-bill. All parties asserted their claims by due pleadings, the matter was litigated, and Faber's mortgage was

established as a valid and prior lien over that of the judgment creditors, and their respective rights were set forth in the decree of February 3d, 1892, as follows: That Faber's mortgage was made for a good and valuable consideration, in good faith, and that it was from the execution and recording thereof a valid lien upon the interest of the said Thomas Bolles in the lands and real estate of which Nathan Bolles, late of the city of Newark, county of Essex, died seized, *subject to the provisions of the last will of said Nathan Bolles,* and still is a lien upon the interest of said Thomas Bolles in so much of said lands as have not been sold according to the provisions of said will; and that said mortgage and the order given by said Bolles on said executors to pay to said Faber all moneys which might thereafter become due on account of his interest in the estate of Bolles until the amount due Faber on his mortgage should be paid, operated as a valid transfer and assignment from Bolles to Faber of all his interest in said estate for the purpose set forth in said mortgage and said order, and that said mortgage and said assignment constitute a lien and claim upon said interest of said Bolles in said estate and the lands and real estate belonging to the same, *prior to the lien* of the defendants the Newark City National Bank and the other defendants, attaching and applying creditors. The amount due on the mortgage was then ascertained and stated, and it was directed that "out of the *moneys arising from the interest which was devised and bequeathed to said Thomas Bolles* in said estate, and now accumulated in the hands of the executors, and which shall hereafter come into the hands of the executors and become due and payable on the interest of said Bolles, and whether arising from the rents of real estate or *from the proceeds of the sale thereof,* the said executors pay, in the first place, to Faber the amount adjudged to be due to him, and, next, to the auditor in attachment the sums of money which are or shall be due for damages and costs, respectively, to the attaching and applying creditors."

It is thus seen that there was no distinct declaration of lien in favor of any of the parties to the suit, except that in favor of Faber on his mortgage, and that was declared to be subject to

the provisions of the will of Nathan. The decree, so far as it is a decree in favor of the judgment creditors, was a mere direction to pay out of the rents and profits and the proceeds of sales the amount of their claims, after paying Faber. This is, undoubtedly, in effect, a declaration that they have a lien upon the estate, but it must be subject to the same proviso as is contained in the declaration of lien in favor of Faber; and the direction to pay the auditor for the attaching creditors out of the rents and profits and proceeds of sales, if any, must have the same limitation. The direction was to pay the money of Bolles, and not the money of his children.

In short, the decree, on its face, shows no indication that a consideration of the question involved and decided in the first suit of *Crane* v. *Bolles* entered into its construction; and a careful examination of the pleadings in the second suit of *Crane* v. *Bolles* fails to show that such question was presented or raised by them. All I find is an allegation in the cross-bill of the complainant bank, which is in these words:

"Pursuant to said writ of attachment and levy thereunder by said sheriff, said attachment became, was and still is a first valid lien on all the right, title and interest, property and estate of said Thomas N. Bolles, which was vested in him at the date of issue, execution and levy of said attachment of, in and to all the estate real of which Nathan Bolles died seized as aforesaid, entitled to priority over the rights claimed by John Eberhard Faber, pursuant to the instrument in the bill of complaint herein described and purporting to have been executed by said Thomas N. Bolles to said Faber."

If the bank and other attaching creditors desired or intended to raise and procure a decision of the court upon the construction of the twelfth clause of the will, it should have distinctly stated the same in its pleadings, and made the children of Thomas Bolles parties defendant.

The result is that I am unable to find any evidence that the chancellor, in making the decree of February 3d, 1892, in the second suit, at all considered the question which he, no doubt, at that time had under consideration and shortly afterwards decided in the first suit, namely, the nature of the title of the children of the testator. I am quite sure that the determination of that question was not necessary for the decree which he made in the second suit; and the conclusion that he did so is negatived

Newark City National Bank *v.* Crane.

by the clause above cited declaring that the lien was subject to the provision of the will of Nathan Bolles.

The defendant Crane sets up an estoppel as to part of the complainant's claim. He states and proves that all of the proceeds of sales and rents which accrued up to March 8th, 1893—the date of Thomas Bolles' death—were accounted for, either to Bolles, before the making of the mortgage and the levy of the attachment, or afterwards to Faber, in pursuance of the decree of February 3d, 1892; and he proves that from the date of the death of Bolles he acted upon the strength of the opinion of the chancellor and his decree of May 17th, 1893, in the first suit, and paid one-eighth of the incoming rents and profits of the estate to the children of Thomas Bolles from that time to the fall of 1897, including therein the proceeds of the sale of one piece of real estate, made during the last days of 1896, and that no claim thereto was ever made by Faber or any of the attaching creditors; that they all acquiesced in such payments—with the knowledge that he withheld them after the death of Thomas Bolles by virtue of the decree of May 17th, 1893—till about the fall of 1897, when he was about completing the sale of the most valuable part of the real estate to the government of the United States, one-eighth of the proceeds of which are awaiting the decision of this suit; and then he received notice from the Newark City Bank that it claimed Thomas Bolles' share, under the decree of February 3d, 1892, when he immediately set aside the share of Thomas, and holds it subject to such decision.

There is no allegation in the bill herein that either of these sales which have taken place since the death of Thomas Bolles was delayed or held back for the purpose of preventing the proceeds from coming to the hands of his creditors, and the case, as presented, shows no feature from which any such inference can possibly be drawn.

For these reasons I feel bound to treat the questions raised in this case as *res judicata* in this court, and to advise a decree that the bill be dismissed, without going into the elaborate and exhaustive argument made by the counsel of complainant to show that the opinion and decision of the chancellor in *Crane* v. *Bolles* (*No. 1*) was erroneous. The complainant's remedy, if it has one, is by appeal.